Your Honor, sir, I, Michael O'Neal, and I represent Mr. Spears, would like to serve a three-minute summary trial. Your Honors, um, I'm in 782, which, uh, is a subject that you can be interviewed at, or which is at your appropriate court. Um, uh, back to November 1st, 2014. On November 1st, 2014, we had a criminal case court, and it was important to me as an individual jurisdiction to reduce Mr. Spears' sentence. Um, whether or not you made the motion to reduce his sentence, I'm not sure, but I think it's an important case. Um, but actually, the motion, uh, was, uh, I made a motion to expile, um, claimant 782, was not, uh, convicted. And so the answer to the question, I'm sorry, I apologize, I had an essential request, was the question was, what was the date when you obtained this motion to reduce Mr. Spears' sentence? I can't give you the exact date. November 4th, November 1st, 2014, yes, September 4th, 1792, was not an incident. And so, it's a very reasonable conjecture that the motion was just recorded from September 1st. Um, now, there are, um, other issues there. Well, we could do that, but, uh, it's a question, not a judgment. Uh, because, you know, I need your own opinion on it, that's why I just recorded it for you, and you see what happens when courts first hear the motion. Well, I, I agree with you that under, under 782, uh, I can understand courts, uh, saying just go file another motion, I understand, but let us decide 782. On the record now, on the record now before the courts, it is 782. Uh, it's, it's probably simply wrong in conclusion that it did not have jurisdiction because, uh, it puts its, its, uh, decision on, um, its belief that it was found in 2001 that, uh, Mr. Spears was responsible for 8.4 kilograms of crack cocaine when there was no such findings. Whether it's, whether it's found at the original site in 2001 that Mr. Spears was responsible for excess of 1.5 kilograms of crack cocaine, but made no specific finding beyond that. He made a specific finding, uh, that Mr. Spears only had, uh, less than that finding, uh, that Mr. Spears was, um, responsible for 11 kilograms of the powder cocaine, which goes to more than 2.4. Uh, while he never made that specific finding, but there was evidence that powder cocaine, that most of the finding was, you, you saw was that most of the powder cocaine was converted to crack cocaine, but the judge never made a specific finding that Mr. Spears was responsible for 11 kilograms of powder cocaine, but he hooked to 11 kilograms of crack cocaine. That's just a funny assumption. Um, you know, in this later order, uh, he, uh, he's nine of the most famous, he, he characterizes his belief that crack cocaine is the, is the, is the right combination. But, if you look at the records of the 2001 census, he made no specific finding on crack cocaine, and adopted the pre-sentence report as well. Um, well, the court had adopted the pre-sentence report's findings. They were not disputed, and the defendant specifically attested to the crack cocaine as the cause of his death. In my belief, that's what I decided to do here. I'll recognize specific objections to Mr. Spears being responsible for any crack cocaine, much like this. So, here's our saying he was responsible for hundreds of kilograms of cocaine. So, that's a problem. But, to see what's not talked about, to, to, to not say, I find, yes, that Mr. Spears, you are responsible for 200 kilograms of crack cocaine. It's not my belief, uh, that Mr. Spears was responsible for more than 1.5 kilograms. It's, it's, it's, uh, it's, uh, and based upon that finding, uh, I'm assuming that, in fact, my whole work with him over the 30 years of, since I met him, applies to the fact that, yes, now, at the time of the, uh, of the question that was made to me, so, um, the question was, well, has that diamond been reduced? Yes, at the time that this was done, I was, well, at the time he filed the motion to reduce the size, the, the, there had been a 2 level drop, 782 has dropped it again. Oh, oh, oh, what does that mean? Between 773 and 782. I'm sorry, I misspoke. I believe I misspoke. At the, at the, at the time of, at the time that the motion to reduce was filed, it, it, the original size had been 1.5 kilograms of crack cocaine. Maybe the size of the bridge would have been 3.6 inches long. In which case, the district court would have jurisdiction, in general, jurisdiction to be included in the action, but it could, the size was reduced to 361 centimeters. The government then said, you know, at the time they filed the motion to reduce, at the original size, the judge made a finding of 8.4 kilograms of crack cocaine, and under that amount, it was life to life. Therefore, there's no jurisdiction because there's no change in the diamond mine. Well, these levels, I mean, what was the time that was applied to the actual use of it? 38.0 level of base, base level of 38, 38, 38.6. I don't remember, I don't remember when it was issued, but I think it was in the 13th, I think it was in the 13th. So, it's too great for that guy, but it's been used. Yes, yes, it's been used. What is the, what was the, so 38, 36, is 36, or 1.5, or what would it be, 38 to reduce to 36, 38 to reduce to 36, or 1.5 kilograms of crack cocaine, and that's right now in Sturgisville. Well, I don't know if that's my question or not, but you can see that we have this diamond mine, and I don't know if it's censored in any sense, but it's required that the diamond mine be reduced, right? And that's, I don't know, what's the timeline on that? The timeline has been reduced. Oh, okay. So, diamond 38 millimeters, yes, so there's a lot of money involved in it, because, you know, you see, he's a, he's a promising guy on 38. He does say that there's a lot of money involved, but in the case of drugs, you're very right, it's possible, but anything below 1.5, you know, a guy on 38, he used to be, I don't know, is he a little higher than 1? Yeah, 1.3 was high for us, so, 38 to 1.5. Huh. Yeah, this is where it's causing you a lot of trouble now. Do you, what's the new guidelines? The basis, what's the line above 1.5, right? No, it should be 1.5 is the new guidelines. There's no longer, like, 100 guidelines, 108, 100 guidelines, 70 or so, you know. It's not the guidelines that's in them. That's in it. 107, 80, 70. The results in writing is, under the government, it is, at the worst case, 364. What do you mean by worst case? What's the worst case? The worst case is over 25 kilograms, 25.2 kilograms. Right now, while we're still driving, the worst case now requires 25 kilograms of normal blood pressure. So, we're having to, the guidelines under this phase, it separates into, as you can see, numerous separate guidelines, then. Now, there are various amounts of crack cocaine now that, to distinguish us, we're having to find what this experience was responsible for. We're not, we don't deny it. It's a much higher level. Absolutely. And that finds right now to get the lines. If you were to hold, for example, an album or CD, and you had to borrow it and throw it away, well, we'd have to technically ask questions to know the difference from it. We have increased, under the old guidelines, to a sense of level 38, right? Yes, the guidelines are considered criminal history and whatever, but the guideline range comes out to a range less than life-high. That first quote, if you do a sort of analysis, everybody comes out to, and we've done a lot of recalculation in recent years. The statute and the guideline ways and statutes say that the new guideline, the new sensory range, has to be less. It has to be less than the original sensory range. And if it is, you can ask the judge to reduce the sentence to the lower end of the range. And then the judge can go any further, but you can reduce the sentence to the lower end of the range. And you see, the top seven digits, in all our cases, are safe or safe. So you can see the difference in terms of option 20, right? Or the guideline 32. If you look at the U.S. time table, and you know 32 is less than it used to be, right? That's because the problem is you can't reduce it to 38. So there's no corresponding 38 in the U.S. language. You see where I'm getting at? 38's been broken into four or five different languages. Well, I'm not sure where you want to go. Well, you want to get, first of all, what I mean by the, you know, the English case. Yeah, first of all, it says 36, and 36 used to be, you know, 221 sentences. Now I'm reading less than 38. So, you know, level 36 can reduce the sentence. You can't say, you know, level 38. There's no comparable, you know, 38 to 38, because, you know, in the U.S., level 38. Basically, that's a level for 1.5 kilograms of cocaine right now is level 36. Well, I'm not questioning this at all. If you were sent to level 38, and you look at today's level 38, you didn't code the same, you know, you didn't cut code the same number of times that it would be used. But if the guideline level is reduced, then the sentence range is reduced. So, if the guideline level is 38, the guideline level of 38 will be corresponding to category 1 within 235 to 293 months. It is okay whether that level is 38, but you need to know what was 38 pretty much before. So, our argument is that it's 38. So, you know, 38 is now category 4. It is now 324. So, there's a bunch of other levels that you can look at. So, the old 38 to the new 38, which is straight across and hugely reduced, well, that's just how you do it. You know, 38 is not the substantial difference. If it's 38, that's category 1. It's not more category 1, 38. The old 38, the old 38 had a higher, the old 38 was 360 to 1. It's now 324 to 405. Now it's 360 to 1. It's covered by a lot of other, a lot of other guideline ranges. I'm not sure if there are other categories. I'm not sure. There's all kinds of, you know, you can do it at 360 to 1, you can do it at level 40, you can do it at level 42, you can do it at level 66, you can do it at 360 to 1. So, you know, go to the other end. I think, you know, it's about how much you can do it. Good morning, Your Honor. Scott Rafferty on the case. The person that you see here is the correspondent regarding crime and litigation. During his sentencing, he also reaffirmed on five occasions, for nine sentences, 35 years in prison. This is what saw the findings. At the first time, Your Honor, I think it's close enough, Your Honor, that this court actually enjoins three findings. It's not just four findings to me, because there were no determinants in the sentence. One, it was necessary to be said that a person should not reach out towards the determinant majority of the public. Perhaps the public in any case can reach out to them. That's one of the reasons this court is finding them. Both sentences, I think, two, there's a lack of evidence to suggest, but I think it's important to know that this court, especially three times back in 2001, versus two would be otherwise unimportant. I think it's important for both subjects here, and certainly for both subjects, the 35-82 motion, which is the court's value. This is the purpose of today's hearing. So, I'm going to turn it over to the sentencing hearing, and I'm going to introduce the people who saw the findings. Back in 2001, your notes for the court were about three businesses. First, you listed the overall velocity of all the consumers, more than 100 grams of protein consumed, to the extent that you believe that's what they are. The second finding that you're holding was the gallon range of articles that you've seen. The quantity for which the consumers were most responsible is more than 1.5 kilograms of proteins in overall volume. The third finding is that you have a gallon's threshold population, and it is quantified as to whether those are in the 11 kilograms of protein, which would be essentially the basis of the defendant's objection, which is the quantity of cholesterol that was consumed, you know, all the time you supported, you know, consumers. Now, the question is, right, whether this outlining sentencing range has been used. It's not, you know, just not, you know, now. All right. Also, you need to look at whether or not the gallon sentencing range has been used. Certainly, to do this in essence to a 30-day, it requires only 1.5 or more, right? Correct. And to begin with, how do you determine the sentencing range for a 30-day? For a 30-day sentencing range, the District Court may not modify the defendant's sentence. If an amendment to the guidelines does reduce the sentencing gallon range this year, more likely than not, it's a question for them to reduce the defendant's range. And we need to test whether or not they've done it or not. One thing to note is that the District Court's original findings in 2001, despite these findings, the 3582 motion, it doesn't matter which guidelines are used, whether it's 2001 or 2003, which was correct. In fact, the time the 3582 motion was used in 2004 was 10 or even 2015 guidelines, because the clauses in the District Court guidelines was more than 100 programs put in place. So, it doesn't really matter which guidelines you use. You can use level 3800 guidelines each. It's going to be based on whether or not the person really is human. They're supposed to be human in all these cases. On JSA, we have 1.5 percent of all court motions are for a conscience. It is human. If you look at the guideline, you will look to the facts that will be used. I'm going to use 1.5 percent. 1.5 percent. The estimator here goes 7.8 or 8.7 or 11 or 25 under either litigation, but it's correct that there's only a limited number of members. So, this is your first instance? Correct. In 2001, you're right, Ron. All the District Court guidelines say it was more than $1,000. Correct. I mean, there are no shortcuts. Correct. There's no reason to condone them. But you did make a mistake. You didn't consider the overall finances of the PSR. Correct. If you look at it in the record, you're checking the paragraphs 84 and 12 of the PSR, which found more than 1.5 percent was your honor's fault. But I think the overall finances are very important. It's what found the excuse. It was responsible for distributing more than 1.5 percent throughout the criminal case, which then carried into the 35-issue motion that the District Court denied last year. And these proceedings here, I think that finance for certainty, of course, they had a narrow legal issue, but the District Court had to stick to the guideline in order to keep the motion under 35-issue. So, that's where it really depends on us agreeing that the District Court found that the conspiracy was responsible, and therefore, he was responsible for more than $100,000. Because if we don't agree with that, then it's going to have to be remanded to the Supreme Court. Well, I think the standard issue here today is, of course, to narrow the legal question. It's not necessary to re-file, re-file all the cases correctly. The District Court never filed the appropriate amount of crack cocaine for the criminalized for sex purposes. But that's the District Court's case. So, I'm thinking we're going to see a whistle-blower sentencing, the PSR, the findings of the filing, and then, of course, the final of the 35-issue motion is there. It's clear that the District Court rejected the findings of the PSR, whether it was the quantity of crack cocaine, or whether or not there's still more than 11 kilograms of crack cocaine, and if there's still an actual serious, and the overall amount of drugs involved in the conspiracy, which is important, there are many findings. And, of course, all of these other findings are false, and they're still correct, right? And, in the interest of time, the District Court said in its rule that if it gave the findings of the PSR were otherwise modified again or clarified, that is why we're arresting the District Court for the actual substance. So, it's the 36-issue that's the top-down finding, and it should be just look at the case and see that it's the top-down finding. So, the defendant never contested the PSR's finding that 11, 12 kilograms of crack cocaine, or at least 11 kilograms of crack. Not that I don't worry about it. So, the 36-issue was not a source of any corruption. The sentence, I can't read the sentencing transcript. So, a low-carb 11-kilograms of crack cocaine found in a low-carb. I can read you the sentencing transcript. The defense counsel's office sees it as well. It just clarifies that the defendant was responsible for those 11 kilograms of crack cocaine. It was a false conspiracy, and that conspiracy is, in fact, the purpose of the crack cocaine investigation. So, I guess this is going to hinge on whether we think that the content of the PSR amounts to a clarifying report as to the scope of the conspiracy potential or not. Yes, and to that point, I think it's important to note that the remains of the PSR, and remember, this is the district court, have heard the trial, have heard its original sentencing, and have been used on a numerous basis. It's important to note that the PSR, in its findings regarding the coverage of the crack cocaine, is responsible. I think it asserts a strong responsibility for it, for certain. So, I think it's crucial that we talk about this at this point. I think it's important to analyze whether or not the appropriate remedy there is to file a new 35-page motion on the 25. I mean, it's been tough to keep track of this a couple of years ago, but that most possibly appears to be the mood, especially at this court. Last time I was here, it was the district court that filed the motion, and the district court essentially found that he was involved in the overall conspiracy, I guess, through his adoption of the PSR. Yes, and I believe it's something that the district court heard during the trial. He was also found to be involved in the catalog of the drug cartels. Well, I think it's important to note that the leadership, or I should put it next to the lower-level leadership, he is the one that carried out his work in the lower-level conspiracy, and that highlights the district court's finding that he was sort of in the middle of the conspiracy. Thus, it's the government's position to disclose to the public the district court's denial of the defense motion, because under 3582, you can't generalize the fact that he was involved in the conspiracy. The district court's use of the district court's position to disclose to the public that he was involved in the case of the murder of a young woman, and that he was involved in the conspiracy. Yes.    The President says, paraguaya is proud.... I don't say prague, I say prairiel. No. Yeah. I dont say prague. Hahaha. Take a quick look... This is in Volume 1 What the district court says is The district court must adopt the pre-sentence report, except upon paragraphs that are amended, clarified, or adjusted, or upon which no binding is necessary. But binding was necessary as to the quantities. There was an objection as to quantities and as to whether you could set a scope. So, it's not an objection to PSR's statement of how much drugs were distributed to Mr. Spears. I was part of their law that regardless, and I'm certain, regardless of the amount of drugs that Mr. Spears can total, when it comes to sets, the court has to make a specific finding on how much of those drugs were the defendant responsible for, or reasonably foreseeable to the clinic. That's what this is all about. And the only finding in the 2001 project, I think it was, that the defendant was responsible for the excess of 1.5 kilograms of crack cocaine. That's the only finding here. Now, 15 years later, the judge can't come back and say, well, obviously I meant this, or what I meant this. We're bound by the record that was made in 2001. Not the record as pursued by the district court years later. Because of that, some of these data is not going away. And under that finding of an excess of 1.5 kilograms, the district court did have jurisdiction, did have jurisdiction to reduce the sentence to 360 days. So, he had jurisdiction to reduce the sentence. It's because of the broadband range. It's because of the broadband range. At the time the motion was filed, it was 360 days away. So, he could assess Mr. Spears' success. In 2001, he didn't file a 4-level leadership hearing to assess his success. And your name was never found in any of the class files. It doesn't. So, it would have to be all based on the statistics and the conspiracy theory. Well, I mean, these are differences. It's not nice to participate in it, Mr. Spears. It's not a question. But still, the question is, how much, how many, how much drugs did you not find contributing to him? And the finding was an excess of 1.5 kilograms. I find that you're responsible, personally responsible, for what was reasonably reasonable, to reduce the expense of 200 kilograms of crack cocaine. Or I could have said, I find you're responsible for 8.4 kilograms, or 10 kilograms of cocaine. But yes. Thank you.
judges: Tashima, Gilman, Bea